*In re* MARRIAGE OF DIANE MARIE DAVIS, Petitioner-Appellee and Cross-Appellant and JAMES NATHANIEL DAVIS, Jr., Respondent-Appellant and Cross-Appellee.

First District (2nd Division) No. 1—88—2302

Opinion filed May 14, 1991.—Rehearing denied July 11, 1991.

Pedersen & Houpt, of Chicago (Marc D. Janser and Marilee Roberg, of counsel), for appellant.

Schiller, DuCanto & Fleck, Ltd., of Chicago (Donald C. Schiller and Sarane C. Siewerth, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Following a nine-day trial, the circuit court granted the dissolution of the marriage of petitioner Diane Davis (Diane) and respondent J. Nathaniel Davis, Jr. (Nat). Nat appeals and Diane cross-appeals from that portion of the judgment which classified and distributed their property. The issues presented are whether the circuit court properly (1) classified securities held in a Merrill Lynch account as marital property; (2) determined that Nat failed to provide clear and convincing evidence of tracing to support his claim of reimbursement for contributions to the marital estate from his nonmarital estate; (3) classified their residence as Diane's nonmarital property; (4) classified Nat's profit sharing plan as marital property; (5) divided the property equally between the parties; and (6) determined that Nat had not dissipated marital assets.

Diane and Nat were married on November 1, 1968. They had two children who were adolescents at the time of the dissolution, which occurred on June 2, 1988. From 1969, the family resided at 150 Oxford Road in Kenilworth, Illinois. During their marriage, Diane managed the home and cared for their children and, during periods of visitation, for Nat's children from a prior marriage. A college graduate, Diane sometimes tutored French on a part-time basis. Before and during their marriage, Nat was employed as the president of the J.N. Davis Co., a family-owned insurance company. He received $40,000 per year, a car, and an expense account; however, most of his income was derived from bonuses and dividends.

In 1981, Nat inherited cash, stocks, and bonds totalling $143,629.56 from his mother. He used these inheritances to establish account number 626—10002, a Merrill Lynch cash management account (10002 account). In 1982, Nat inherited additional assets from his father, including cash, bonds, a money market fund, a half interest in a Florida condominium, 1,250 shares of J.N. Davis Co. stock, and stock in Washington National. $241,461.88 in stocks, bonds, and other securities and $153,000 in cash from his father's money market account were deposited into the 10002 account.

On February 28, 1986, the J.N. Davis Co. underwent a reorganization in which shares of its stock were exchanged for shares in Harcourt Brace & Janovich Co. (Harcourt Brace). On July 3, 1986, Nat sold all of his Harcourt Brace stock, receiving $1,870,561.30 in exchange for his inherited stock and $448,934.66 in exchange for the stock he had purchased during the marriage. On that very day, Nat

deposited these proceeds in the 10002 account, but immediately electronically transferred $448,934.66 to a separate account.

The circuit court ordered dissolution of the marriage and entered final judgment on June 2, 1988. The court ordered the parties to carry out a joint parenting agreement which it had approved on September 30, 1986. Nat appeals from that portion of the judgment which classified the Merrill Lynch 10002 account as marital property; classified their residence as Diane's nonmarital property; classified his IRA rollover account as two-thirds nonmarital and one-third marital; and apportioned their marital property equally. Diane cross-appeals from the circuit court's finding that Nat did not dissipate marital assets.

I

Nat first maintains that the circuit court erred when it determined the 10002 account was marital property. He contends that, because the 10002 account was created with inherited assets, it should have been classified as nonmarital property pursuant to section 503(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 503(a)(1)). He then argues that, to the extent that marital property may have been contributed to the 10002 account, the contributed property was transmuted to nonmarital property subject to a right of reimbursement for the marital estate. Ill. Rev. Stat. 1987, ch. 40, pars. 503(c)(1), (c)(2).

 Prior to distributing property upon dissolution of marriage, the court must classify it as marital or nonmarital under section 503 of the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 503.) Normally, property acquired by either spouse after the marriage but prior to judgment of dissolution is presumed to be marital property regardless of how title is held. (Ill. Rev. Stat. 1987, ch. 40, par. 503(b).) Property obtained by gift, legacy, or descent, or in exchange for property acquired by gift, legacy, or descent, however, is excepted from marital property and is classified as nonmarital property. (Ill. Rev. Stat. 1987, ch. 40, pars. 503(a)(1), (a)(2).) Therefore, as Nat contends, property received by him by virtue of inheritance from his parents fell within the exception and qualified as nonmarital property.

Nat deposited portions of his inheritance, various securities, and some cash into the 10002 account. If Nat had deposited nothing into this account other than the securities and cash he had inherited from his parents or received in exchange for inherited assets, no commingling or transmutation would have taken place; the assets of the account would have remained nonmarital.

■ Between 1981 and 1985, however, Nat deposited over $340,000 in marital funds into the 10002 account to earn higher interest until he needed to withdraw those funds to pay expenses. By virtue of the structure and operation of the 10002 account, no deposited funds were held in cash. By the end of the month, deposited funds had been used to purchase other stock, bonds, or shares in the cash management account, a money market fund known as the CMA Money Fund. Thus, newly created assets came into being. Once marital and nonmarital funds are commingled and lose their identity through acquisition of a newly created asset during the marriage, the asset is marital. Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(1); *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068.

In the 10002 account, shares of the CMA Money Fund were sold to release funds to cover checks written against the account when the temporary cash holdings were insufficient. As each inherited holding was sold, the cash received was used to purchase more shares in the CMA Money Fund, and they in turn were sold to purchase new securities. Though such shares were initially nonmarital property, when excess marital funds were placed in the 10002 account, additional shares of the CMA Money Fund were also purchased.

■ There therefore was no way to distinguish which CMA Money Fund shares were used to purchase additional stock or bonds. Nat admitted that he could not tell which particular CMA Money Fund shares were sold to buy an asset or to return cash to the joint checking account. Additionally, between July 1986 and March 1987, Nat withdrew money from the 10002 account to purchase the other half of the Florida condominium, the Northbrook townhouse, and other stock and securities. Therefore, all newly acquired property purchased with the proceeds of the sale of CMA Money Fund shares, purchased by indistinguishable marital and nonmarital funds, was properly classified as marital.

■ With two exceptions, all the securities Nat inherited had been sold during the marriage. The two securities which had not been sold, MIT Insured Trusts and the remaining Washington National stock, were properly awarded to Nat as his nonmarital property. Since no distinction could be made between the CMA Money Fund shares bought with the proceeds from the sale of inherited securities and the shares bought with marital funds, the circuit court did not err when it determined that all other securities held in the 10002 account were marital property. This is so because marital and nonmarital property were "commingled into newly acquired property resulting in a loss of

identity of the contributing estates." Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(1).

■ Nat nevertheless maintains that the 10002 account was a non-marital asset because the account initially consisted of inherited assets. He contends subsequent contributions of marital funds into the 10002 account were immediately transmuted into nonmarital property. This argument ignores the operation of the account and the portion of section 503(c)(1) which provides that the commingling of marital and nonmarital property into newly acquired property results in transmutation to marital property. Nat also asserts that the $340,000 contributed to the nonmarital estate was an insignificant amount and should not have been considered a serious investment. The record reflects, however, that although the value of the 10002 account fluctuated, the value of the account prior to the 1986 deposit remained under $600,000. Therefore, $340,000 was a significant portion and contributed heavily to the account's earnings.

## II

Nat alternatively contends that even if the circuit court properly characterized the 10002 account as marital, he provided clear and convincing evidence of tracing to support his claim of reimbursement for contributions made by him to the marital estate from his nonmarital estate. Diane responds that, because Nat was unable to trace any contributions from his nonmarital estate by clear and convincing evidence, the circuit court properly determined that he was not entitled to reimbursement.

■ Section 503(c)(2) of the Act provides that when one estate contributes to the property of another estate, the contributing estate is to be reimbursed from the estate receiving the contribution notwithstanding any transmutation, provided the reimbursement is traceable by clear and convincing evidence. (Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(2).) Tracing requires that the source of the funds be identified. Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification & Division Upon Dissolution of Marriage* (1984), 72 Ill. B.J. 336, 339.

Because of the very nature of the 10002 account, it is impossible to ascertain the source of funds with which specific stocks and securities were purchased. The only evidence submitted by Nat to establish that he was entitled to reimbursement was the 10002 account's monthly statements. While a great portion of the funds in the 10002 account at the time of trial was contributed from Nat's exchange of nonmarital stock for cash, it is impossible to ascertain the source of

funds which purchased stocks which suffered losses or showed gains. Nat therefore failed to trace the individual securities purchased by nonmarital funds by clear and convincing evidence.

■■ Though it was established that Nat intended to segregate the proceeds from his inheritance from the marital estate, there was no evidence as to what portion of the initial $1.8 million remained in the account. Indeed, some of the amount in the CMA Money Fund may have been proceeds from stocks purchased with marital funds. Thus, the circuit court did not err when it determined that the only clear and convincing evidence of remaining nonmarital assets was the MIT Insured Trusts and Washington National stocks. Due to the active trading in the account, a determination of a specific amount of reimbursement to Nat would have been speculative. Based on the evidence presented, no clear and convincing evidence established that the amount contributed by Nat was retraceable so that reimbursement to his nonmarital estate pursuant to section 503(c)(2) was appropriate.

## III

■■ Nat next contends that the parties' residence was improperly classified as Diane's nonmaterial property.

Section 503(b) of the Act provides:

"(b) For purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership ***. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." Ill. Rev. Stat. 1987, ch. 40, par. 503(b).

Nat maintains that he did not make a gift of the marital residence to Diane and that the evidence presented at trial was insufficient to rebut the statutory presumption. Diane contends that based on her own testimony, that of Nat, and that of Nat's attorney, Samuel Young, the circuit court correctly ruled that the marital residence was her nonmarital property.

■■ The presumption of marital property can be overcome only by clear, convincing, and unmistakable evidence. Mere proof that title to a tract was placed in one party's name does not rebut the presumption created by section 503 (*In re Marriage of Deem* (1984), 123 Ill.

App. 3d 1019, 463 N.E.2d 1317); there must be a donative intent to pass title and relinquish all present and future dominion over the property. *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321.

In the instant case, testimony of Nat and Samuel Young established the reason for the conveyance to Diane. The parties acquired the house at 150 Oxford Road in Kenilworth, Illinois, on December 15, 1969. On May 1, 1978, Nat quit-claimed his interest to Diane; the house remained in her name from that date. Nat testified that after the 1978 change in estate tax laws, he consulted with his attorney, who suggested that title to the house be put in Diane's name. Young testified that his advice was to eliminate a taxable asset in Nat's estate and to create more equally divided assets. The testimony of the parties was in conflict as to whether Nat intended to convey the house as a gift or wholly for tax purposes. Diane executed no reassignments or reconveyances and was not named an undisclosed trustee or nominee for Nat.

The circuit court relied heavily on *Wodehouse v. Commissioner of Internal Revenue* (2d Cir. 1949), 177 F.2d 881, as dispositive of Nat's actions. In *Wodehouse*, the court held that the motive to transfer property to a spouse to reduce income taxes did not preclude the making of a valid gift. The court determined that the instrument of conveyance expresses the grantor's intent and "deprives him absolutely of all interest in or control over the property transferred."

Here, the circuit court's heavy reliance on *Wodehouse* was improper as Illinois case law provides more pertinent guidance. Illinois courts have expressly rejected the position that transfer of title to one spouse is sufficient to rebut the presumption of marital property, which exists "regardless of whether title is held individually or by the spouses in some form of co-ownership." (Ill. Rev. Stat. 1987, ch. 40 par. 503(b).) For example, in *In re Marriage of Parr* (1981), 103 Ill. App. 3d 199, 207, 430 N.E.2d 656, the presumption was not rebutted where the husband quitclaimed his interest in a condominium to the wife primarily for business and tax purposes. Similarly, in *In re Marriage of Leff* (1986), 148 Ill. App. 3d 792, 499 N.E.2d 1042, where the husband testified that he backdated a quitclaim deed to property to protect it from a possible civil action, the court determined that no true donative intent was shown.

Further, in *In re Marriage of Wittenauer* (1981), 103 Ill. App. 3d 53, 55, 430 N.E.2d 625, the court held that real property acquired after the marriage but placed in the wife's name "as an estate planning device" and "to avoid unfavorable tax consequences" was marital.

The wife maintained the tract of land was a gift to her and thus nonmarital property under section 503(a)(1). The court recognized that the husband never relinquished control of the parcel in question, and in fact treated it as his property. Mere proof that title was held in his wife's name did not rebut the presumption contained in section 503(b). *Wittenauer*, 103 Ill. App. 3d at 55.

■■ Here, Nat and his attorney established that the conveyance was part of an estate tax planning scheme. Nat continued to control the home by making payments for mortgages, taxes, insurance, and by making improvements. Moreover, he filed no gift tax return. The clear and convincing evidence necessary to rebut the presumption of marital property did not exist. The circuit court's determination that the family residence was Diane's nonmarital property and not marital property was error and is reversed.

## IV

Nat next maintains that the circuit court improperly classified as marital property an IRA rollover account derived from his interest in the J.N. Davis Co. profit sharing plan. He alternatively asserts that the circuit court improperly valued his nonmarital contribution to the IRA rollover account. We agree that the account was improperly valued.

■■ Retirement benefits earned during the marriage in the form of pensions and profit sharing interests are designated as marital property. (*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868.) Upon dissolution, the marital portion of such a pension or profit sharing interest, calculated by the ratio of years of accumulation during marriage to the total years of accumulation, should be divided between the spouses. (See *In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.) An alternative method has been used in similar apportionment decisions concerning life insurance and equity in a home to determine the correct marital portion: if the value of the premarital portion is known, the ratio of that figure to the value of the entire plan at the time of dissolution produces the correct marital portion. *In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 527 N.E.2d 18; *In re Marriage of Van Ness* (1985), 136 Ill. App. 3d 185, 482 N.E.2d 1049.

■■ Here, the parties stipulated that the premarital portion of the IRA rollover of the J.N. Davis Co. profit sharing plan in 1968 was $57,815.23. Between 1968 and 1976, the company contributed $96,556.61 to the plan. The percentage of the nonmarital portion to

the marital portion is, therefore, 37.5% to 62.5%. When the profit sharing plan terminated in 1976, the total amount of $256,933.63, which included appreciation of $102,561.79, was rolled by Nat into an IRA account. The circuit court properly classified the IRA, which solely through the accrual of interest was valued at $633,195 at the time of dissolution, as partially marital and partially nonmarital. The court properly concluded that the character of the pension plan had not changed merely because it had been terminated by the company and Nat had rolled it into an IRA account. The marital estate is entitled to reimbursement for the portion it contributed to this account; however, the court's approximation of a 2 to 1 ratio was in error. The percentages stated above are more accurate and prevent any unjust windfall. This portion of the circuit court's judgment is therefore reversed and remanded with directions to reimburse the marital estate $395,747 rather than the $422,086 awarded by the court.

V

Nat next contends that the circuit court abused its discretion by dividing assets equally between the parties and by refusing to reopen proofs concerning the value of certain property. Diane maintains that the division of marital property in approximately equal proportions was supported by the manifest weight of the evidence and was within the circuit court's discretion. She contends that the valuation date for the various assets was within the circuit court's discretion and appropriate.

A reviewing court will not disturb the circuit court's equitable distribution of property, absent a showing that there was an abuse of discretion. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925.) The touchstone of a proper apportionment is whether it is equitable in nature. (See *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) Section 503(d) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)) sets forth factors for the court to consider in order to divide the parties' accumulated marital estate in just proportions. While the circuit court must consider all relevant factors under section 503(d), it need not make a specific finding as to each relevant factor. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 518 N.E.2d 1316; *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.) The circuit court has broad discretion to apportion marital property in just proportions (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336), and will be reversed only if no reasonable person would take the view adopted by the circuit court. *In re Marriage of Lee*, 78 Ill. App. 3d at 1127.

The most cogent argument which Nat advances as to the purported impropriety of the property disposition order entered by the circuit court is that, instead of giving him a higher proportion of the assets based on his substantial contributions to the estate, it divided the marital estate equally. This argument has some superficial appeal, but the record establishes that the circuit court carefully considered each factor in light of the preference for apportioning property so that an award of maintenance would not be necessary. *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.

In applying the factors provided by section 503(d), we note that the marriage was of long duration; Diane made substantial contributions as a homemaker, especially in caring for the two children; there was evidence that Diane assisted Nat with his employment by such activities as entertaining clients. The record also discloses that Diane has a lower earning capacity than Nat and is suffering from poor health. The property division had to take into account Diane's demonstration that she had poor prospects for acquisition of assets in the future. (*In re Marriage of Aschwanden*, 82 Ill. 2d 31; *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676.) In fashioning the property disposition under review, the circuit court considered all relevant factors contained in section 503(d). Although other courts may have apportioned the property differently, the property distribution here does not indicate an abuse of discretion necessitating reversal. *In re Marriage of Lee*, 78 Ill. App. 3d at 1127.

Nat has also failed to show that the circuit court erred in its distribution of property because it failed to consider the tax consequences of the property division. In its oral pronouncement, the court stated it considered all factors in section 503(d), which would include the provision of section 503(d)(11) pertaining to the tax consequence of the property division upon the respective economic circumstances of the parties. Here, the circuit court ordered that Nat pay to Diane $1,355,049 first from cash being held in the 10002 account and then from two other accounts. Any amount still unpaid from those cash resources was to be paid from the liquidation of the securities held in the 10002 account. The court may consider only those tax consequences that immediately and consequentially flow from the court's division. *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125.

Although Nat argues that the division forces him to liquidate assets and pay taxes on the gains, the record is devoid of any proof that this is an immediate consequence of the circuit court's order. Apparently, in the past when Nat has had to liquidate assets to pay for

other expenses, no tax consequences were incurred. Despite Nat's assertion that, instead of cash, Diane should receive the amount in securities of like kind, evidence that the needs of Diane are for liquid assets and that the order did not immediately expose Nat to negative tax consequences supports the decision of the circuit court and should not be overturned. See *In re Marriage of Ohrt* (1987), 154 Ill. App. 3d 738, 507 N.E.2d 160.

Nat further argues that the circuit court should have reopened proofs concerning the values of certain assets. However, the record shows that the values used in apportioning property were ascertained in March and April 1988, a short time prior to final judgment in June 1988. The valuation date was not so remote from the date of judgment in time or significant events (see *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659; *In re Marriage of Suarez* (1986), 148 Ill. App. 3d 849, 499 N.E.2d 642), and delays of longer periods of time have been held acceptable. *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 507 N.E.2d 891.

■■■ Nat specifically contends that the valuation of the house was over three years old and therefore a current assessment should have been conducted because its value may have increased. The parties, however, stipulated to the value of their marital residence at trial. Absent fraud or collusion, the stipulation as to the value of property is binding. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294; *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.) Nevertheless, Nat maintains that the circuit court erred in not reopening proofs.

■■■ The denial of a motion to reopen proofs is within the sound discretion of the circuit court and will not be disturbed absent a clear abuse of discretion. (*In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551.) If evidence offered for the first time in a post-trial motion could have been produced at an earlier time, it is not an abuse of discretion for the court to deny its introduction into evidence. (*In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 506 N.E.2d 1000.) Nat's post-trial motion failed to offer any evidence that the value of the house increased over an 11-month delay, such that it was an abuse of discretion for the circuit court to deny his motion. The fact that the judgment includes the valuation of the Northbrook and Florida residences stipulated to at trial is supportive of the circuit court's denial of the motion. Nat offered no proof at trial that the value of the house was no longer accurate and, based on the record, the circuit court did not abuse its discretion when it denied Nat's motion. However, because the court erred when it determined the house

was nonmarital property, upon remand, a current assessment of the house must be obtained and utilized.

## VI

Diane asserts in her cross-appeal that the circuit court's decision that Nat had not dissipated marital property was against the manifest weight of the evidence and therefore an abuse of discretion which should be reversed. She contends that there was sufficient proof that Nat dissipated assets from Merrill Lynch account number 626—20505 (20505 account), an account Nat established following Diane's filing for dissolution of marriage, in which he deposited funds from his annual bonuses or quarterly dividends until needed for expenses. Nat maintains that this claim of dissipation cannot be allowed because Diane expressly waived the claim in a pretrial memorandum and raised it for the first time in closing argument. He asserts he did not dissipate assets and the circuit court did not abuse its discretion by so ruling.

■■■ Although in a pretrial memorandum Diane failed to check a box indicating that dissipation of marital assets was at issue, Diane did not waive the issue. Furthermore, the record supports Diane's position that Nat knew from the start of the trial, indeed from her opening statement, that she intended to raise this issue for the court to consider. Moreover, Nat failed to object to the raising of the issue during opening statement or when evidence concerning the dissipation of assets from the 20505 account was presented, conduct more indicative of a waiver on his part than on Diane's part. (See *LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496; *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.) The issue, then, is whether the decision that Nat did not dissipate marital assets was against the manifest weight of the evidence and therefore an abuse of discretion. *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 471 N.E.2d 1008; *In re Marriage of Petramale* (1981), 102 Ill. App. 3d 1049, 430 N.E.2d 569.

■■■ The record reflects that Nat used funds from the 20505 account for trips with the children and for vacations. As the circuit court found, he was merely maintaining the lifestyle that the parties had enjoyed during the marriage. Maintaining the lifestyle established during the marriage does not support a claim of dissipation. (*In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068.) The record shows that Nat was meticulous about documenting his expenditures and that he accounted for every check written. This is not

778

a case where Nat spent funds during the marriage on a girl friend (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 471 N.E.2d 1008), on other nonfamily purposes (*In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334), or secreted funds in other places without explanation (*In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 507 N.E.2d 207). The 20505 account was established by Nat after his separation from Diane to separate funds from the 10005 account, which he considered to be a nonmarital asset. The 20505 account was marital and not therefore solely for Diane's benefit. Nat used the account for family expenses, including some of his own which would have been part of the family's expenses, to benefit all. Though Nat had other funds available to him, he was not required to use those funds prior to use of marital funds for family purposes. Since the evidence was insufficient to support a finding of dissipation, the circuit court ruled correctly. See *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.