NOTICE

Decision filed 06/15/15. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2015 IL App (5th) 140062

NO. 5-14-0062

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JEFFREY P. BROWN, | ) | Madison County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 10-D-75 |
| | ) | |
| KERRI L. BROWN, | ) | Honorable |
| | ) | David Grounds, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justice Moore concurred in the judgment and opinion.
Presiding Justice Cates specially concurred, with opinion.

**OPINION**

¶ 1    On January 25, 2010, Jeffrey Brown filed a petition for dissolution of marriage from Kerri Brown. The case proceeded to a one-day trial on April 5, 2012. Eleven months later, on March 8, 2013, the court issued its ruling in an order titled "Supplemental Judgment on All Remaining Issues." On April 5, 2013, Kerri filed a timely posttrial motion asking the court to reconsider various issues. On May 13, 2013, the court heard the motion. On January 8, 2014, the court entered its order on posttrial motions. Jeffrey filed a timely notice of appeal. We reverse.

1

¶ 2                              BACKGROUND

¶ 3     Jeffrey and Kerri were married in Godfrey, Illinois, on February 14, 1987.  The parties adopted two children, C.L.B., born in 2002, and C.M.B., born in 2003.

¶ 4     On January 25, 2010, Jeffrey filed a petition for dissolution of marriage from Kerri.  On January 29, 2010, the trial court entered an order, by stipulation and agreement of the parties, that both parties were restrained and enjoined from transferring, encumbering, spending, selling, conveying, or alienating any of the marital assets of the parties or nonmarital assets of each party, and from incurring any new indebtedness for which the other party could be held liable, absent written consent of the other party or prior leave of the court.

¶ 5     On February 3, 2010, Kerri filed a counterpetition for dissolution of marriage.  On March 18, 2010, the parties entered into a stipulated joint parenting agreement.  The parties agreed to share joint legal custody of the children with Kerri as the primary residential custodian.  The parties agreed that the children would attend Evangelical Children of the Young Years School or an equivalent school unless otherwise agreed.

¶ 6     The court entered a temporary order on May 11, 2010.  It ordered Jeffrey to pay $1,200 per month in child support commencing May 1, 2010, to pay $500 per month toward the parties' bills, to pay $300 per month toward the children's daycare expenses, and to maintain medical insurance on Kerri and the children.  Kerri was allowed to retain the income from the couples' jointly owned frozen custard parlor called "Shivers Frozen Custard" (Shivers).  She was ordered to make an accounting of the business showing all income and expenses.  Kerri was allowed to retain possession of the couples' rental

2

property and was ordered to pay the mortgage and insurance on the property. The court ordered that the parties' 2010 tax refunds be used to pay all property taxes, and the balance was to be held in escrow. Kerri was allowed to retain possession of the marital home. Kerri was ordered to pay and keep current on the parties' credit cards, first and second mortgages on the marital home, utilities, the children's expenses, and house and life insurances. All other financial issues were reserved.

¶ 7    On May 21, 2010, Jeffrey filed a motion to vacate or in the alternative to modify the May 11, 2010, order. He alleged that, due to the inclement weather, his employment had been substantially curtailed making him unable to meet his child support and marital debt obligations. On May 24, 2010, the trial court entered a uniform order for support that mirrored the support terms of the May 11, 2010, order.

¶ 8    On July 27, 2010, the trial court entered an order taking Jeffrey's motion to vacate or in the alternative to modify under advisement. It stated that both parties, by agreement, were to consult with an attorney within the following three weeks regarding the propriety of filing for bankruptcy. Kerri was ordered to account for the income and expenses of Shivers and the rental property within three weeks from the date of the order.

¶ 9    On October 26, 2010, Jeffrey petitioned the court to enter a rule to show cause and citation against Kerri to show cause as to why she should not be held in contempt for failing to account for income and expenses regarding Shivers and the rental property as ordered on July 27, 2010.

¶ 10   On October 27, 2010, Jeffrey filed another motion to modify support. He asked the court to modify the support order commensurate with his actual income and ability to

3

pay.

¶ 11    On February 1, 2011, Kerri filed a petition to modify. She alleged that since the May 11, 2010, order, she had not received child support, daycare expenses, or the monthly amount toward the parties' bills that Jeffrey was ordered to pay. As a result, she alleged that she was unable to pay the mortgage and insurance payments on the rental property, to pay the credit card payments, to pay the first or second mortgage on the marital residence, to pay the utilities, to pay the children's expenses, or to pay the home and life insurance premiums. She asked the court to order Jeffrey to pay the mortgages, the credit cards, the utilities, the insurance premiums, and the children's expenses. On the same day, she filed a petition for adjudication of indirect civil contempt asking the court to sentence Jeffrey to the Madison County jail until he paid the child support arrearages, the arrearages in the amounts to be paid toward the parties' bills, and the daycare expenses.

¶ 12    On February 4, 2011, the court entered an agreed order of temporary modification. Pursuant to the terms of the order, Jeffrey was to pay $1,250 per month for child support beginning February 2011. The order stated that "[t]he parties' court ordered obligations to pay mortgages and bills is modified so that they do not have a court ordered obligation to pay them, including order for Jeff to pay $300 for day care." Kerri was allowed to retain the rental income free of claims of Jeffrey pending a further order. The parties were to contact a bankruptcy attorney. Kerri was to allow Jeffrey access to the Cornerstone Bank accounts.

¶ 13    On February 7, 2011, Jeffrey filed a motion to compel compliance with discovery

4

and for the imposition of sanctions for noncompliance. On June 15, 2011, Kerri filed a petition for rule to show cause for Jeffrey's failure to pay child support. On September 22, 2011, the Illinois Department of Healthcare and Family Services filed a petition to intervene and a motion to determine child support arrearages.

¶ 14 On September 30, 2011, the trial court entered a temporary order requiring Jeffrey to pay $1,250 per month for child support beginning September 1, 2011. The court found that as of August 31, 2011, Jeffrey owed no child support arrearages to Kerri. Jeffrey was ordered to maintain health and dental insurance on the children. The parties were ordered to split all uninsured or nonreimbursed medical, dental, optical, pharmaceutical, and orthodontic expenses. The court entered an order in favor of Kerri and against Jeffrey in the amount of $5,676.94 for unpaid daycare expenses and bills.

¶ 15 On October 24, 2011, Jeffrey filed a petition to modify temporary child support. He alleged that Shivers had been foreclosed upon, that the trade in which he had trained had suffered a downturn in the industry, that he was not earning the amount of money he earned at the time the order was entered, and that Kerri dissipated business funds and failed to apply them to business debts and accounts depriving the marital business of the necessary capital for operation and causing the foreclosure and sale of the parties' property. Jeffrey asked that the court reduce his child support obligation pursuant to statutory guidelines, assess an obligation against Kerri for dissipation of the marital estate, and relieve him of his obligation to contribute to the children's daycare expenses or Kerri's bills.

¶ 16 On December 8, 2011, the court entered an order setting child support. The court

5

found that Jeffrey had a gross income of $536 and a net income of $455 per week. Jeffrey was ordered to pay $128 per week in child support commencing October 21, 2011.

¶ 17   On February 23, 2012, Jeffrey filed a petition for adjudication of indirect civil contempt alleging that Kerri had failed to comply with the January 29, 2010, injunctive order restraining the parties from disposing of any of the marital assets. He asserted that she disposed of assets valued at over $15,000. Additionally, he contended that she took the rental income from the marital rental property and failed to pay mortgage payments causing the property to be put in foreclosure.

¶ 18   On March 7, 2012, Kerri filed a petition for rule to show cause. She alleged that Jeffrey cancelled her beneficiary status on a life insurance policy that he was ordered not to change on May 11, 2010, in an effort to coerce her into giving him one-half the rental income. She further asserted that Jeffrey stole certain items of personal property.

¶ 19   On April 5, 2012, Kerri filed a motion *in limine*. She asserted that the February 4, 2011, order provided that she was entitled to retain the rental income free from any claim of Jeffrey pending further order and that she did not have a court obligation to pay the mortgage or bills. She argued that introduction into evidence of rental income would not serve any proper purpose in the trial proceedings and would instead provide irrelevant and unfair information that would be unduly prejudicial to her case. She asked the court to exclude any reference to any rental income she received.

¶ 20   On April 5, 2012, the court held a trial. The court denied Kerri's motion *in limine*. The parties stipulated that each party was to receive one-half of any 401(k) or retirement

plan.  Kerri testified that she worked full time in outside sales for Fischer Lumber.  Her W-2 for 2011 showed that she earned $48,571.

¶ 21    Jeffrey testified that he currently worked as a caretaker of a property in exchange for rent and utilities.  At the time of the hearing, he was receiving unemployment.  Prior to that, he worked for Keller Construction for approximately one year.  He was laid off due to lack of work at the company.  He testified that in 2011 he received $15,151 in unemployment benefits.  In 2011, his total income was $30,675.19.  He testified that his union hall called him each day to inform him whether there were any jobs and that he had never turned down a job.

¶ 22    Jeffrey testified that after dissolution proceedings commenced, Kerri had exclusive control over the marital home, the rental property, and Shivers.  When the dissolution proceedings first commenced, Jeffrey and Kerri were current on the payments on the rental property, the marital home, and Shivers.  While in Kerri's exclusive control, all three were lost to foreclosure after she fell behind on the payments.

¶ 23    Kerri testified that she had been involved with Shivers since about 1994.  Jeffrey testified that Kerri did all the bookkeeping for Shivers while he performed all the repairs.  Since the petition for dissolution was filed, Kerri maintained sole control over Shivers' bank accounts.  Kerri testified that, in October 2011, the bank started foreclosure proceedings on Shivers and made her close the business.  The balance on deposit in the Shivers account in November 2011 was $23,099.93.

¶ 24    Kerri testified that she was ordered to provide an accounting for the income and expenses regarding Shivers and the rental property on July 27, 2010, and she gave it to

7

her attorney. She claimed to have given her attorney the accounts receivable paperwork from the accountant's office and copies of checking statements. Kerri testified that she did not provide the Liberty Bank statements to Jeffrey at the time the business was operating and winding down. Jeffrey denied ever receiving an accounting, and no accounting was offered into evidence.

¶ 25 Kerri testified that, as of February 29, 2012, the Liberty Bank account had a balance of $8,185.35. Kerri testified that since that date she had paid additional bills from the account including Verizon cell phone bills for a telephone that she used for the business, $77 to Office Depot for a printer to print business taxes, a bill to Secure Oneself to pay for a past due alarm company bill for Shivers, $272 to Wal-Mart, and between $100 and $500 to Garrett Paper Products. Kerri testified that she paid a bankruptcy attorney $2,000 or $2,500 out of the Shivers account as a retainer for a joint bankruptcy. Kerri testified that she did not pay any personal bills from the Shivers account. She stated that there were still outstanding obligations owed on the business including the taxes for the business for February through October 2011. Kerri testified that she doubted that there would be any remaining funds in the Shivers account. She agreed to split any remaining money with Jeffrey.

¶ 26 Jeffrey stated that he knew that Shivers was having trouble, but he did not know the extent of the problems until it closed. Jeffrey testified that he learned that the mortgage was not being paid on Shivers when he went to the bank to check on the mortgage, on which he was indebted. Jeffrey stated that he asked to see the business records, but Kerri would not show them to him.

¶ 27    Kerri testified that the rental property had a mortgage balance in November 2011 of about $35,000 and that the monthly payment was $390.10.  She stated that she believed the current market value on the rental property was $55,000 and that the parties owed $29,962.  Jeffrey testified that he believed the rental property was worth $100,000.  The rent payment was $500 per month.  Kerri testified that the tenant always paid his rent.

¶ 28    The May 11, 2010, temporary order states that Kerri "shall retain income from rental property and pay the mortgage and insurance payments."  Kerri testified that she paid the mortgage and insurance payments until the next temporary court order which was entered on February 4, 2011.  She admitted that, in about January 2011, she stopped making the mortgage payments and kept the rent payments.

¶ 29    Jeffrey testified that he never received an accounting of the income from the rental property.  He testified that, at some point, he checked with the bank and discovered that Kerri had stopped making payments on the rental property.  The bank gave him copies of the cancelled checks, which showed that the tenant had been paying the rent, and a document that showed which payments Kerri had failed to make.  Jeffrey stated that he never authorized Kerri to take the rental income and not pay the mortgage.  Kerri never discussed stopping making the mortgage payments on the rental property with Jeffrey.

¶ 30    Kerri testified that the rental property was purchased by Cornerstone Bank at a foreclosure auction in March.  The property was auctioned for failure to make mortgage payments.  Kerri testified that the money she received from the rental property was used to pay living expenses such as groceries, clothes, haircuts, school tuition, before and after

school care, and daycare in the summer.

¶ 31   Kerri testified that she scrapped a GMC Jimmy, a motor home, an old mobile home trailer, and a manure spreader because she and Jeffrey determined that they needed to clean up the marital property so they could sell it before it was foreclosed upon.  She could not remember how much money she received for scrapping this property.  She testified that she kept the money.  Jeffrey testified that there were more items missing than what Kerri admitted to scrapping.  He stated that he never told Kerri that she could sell the items and keep the money.  Jeffrey estimated that the items Kerri scrapped were worth $2,000.

¶ 32   Kerri testified that she removed items from the marital home including two chandeliers and a corn furnace.  Jeffrey estimated that the chandeliers were worth $300 each when they were purchased.  He stated that he paid $2,300 for the corn furnace.

¶ 33   Kerri testified that she lived in the marital home until October 29, 2011, when she had to move out because the house was damaged in a fire.  At the time of the trial, the house was in foreclosure.  She testified that she thought the first mortgage on the property was for $150,000 and the second mortgage was for $63,000.  Kerri testified that she stopped making the $1,250 monthly mortgage payments on the home in January 2011.  She stated that some of the money she would have paid on the mortgage went to pay her attorneys.  She could not remember what she spent the rest on.  Kerri testified that the home insurance "expired in October" so there was no insurance on the home at the time of the fire.

¶ 34   Jeffrey testified that the house was appraised at $380,000 before the fire.  He

10

agreed with Kerri that, in the current market, the house was probably worth $250,000.

¶ 35    Kerri testified that she received one-half of the 2010 tax refund and that the other one-half was being held in a trust account. She asked the court to award it to her in satisfaction of the arrearage Jeffrey owed her as ordered on September 30, 2011.

¶ 36    Both children had attended Evangelical Children of the Young Years School since kindergarten, and Kerri requested that the court find that it was in the children's best interest to continue attending the school. Jeffrey had not contributed to the cost of the children's education. Kerri testified that the total amount that she had paid for the 2010-2011 and 2011-2012 school years was $15,471.99. She requested that Jeffrey be ordered to pay one-half of that amount and one-half of the children's education expenses going forward.

¶ 37    Jeffrey testified that he could not afford to pay for private school for his children. He stated that he had no objection to the children attending the public school in the district where Kerri resided. Jeffrey testified that Kerri made the decisions about where the children attended school and daycare. He stated that he was available to watch the children because he was not currently working but that Kerri refused.

¶ 38    Jeffrey testified that he met with the bankruptcy attorney once for a consultation. He never authorized the attorney to represent him, however, and never paid her a retainer.

¶ 39    Jeffrey testified that he maintained health insurance on Kerri and the children. He stated that he would be able to maintain it on the children. Kerri claimed that Jeffrey had not paid any of the uninsured medical bills. Jeffrey denied any knowledge of any bills. He stated that he had no objection to paying one-half of the children's uninsured medical

bills.

¶ 40    Jeffrey acknowledged that there was a court order dated September 30, 2011, ordering him to pay Kerri $5,676.94 for unpaid daycare and bills. He stated that he felt the money should be deducted from the rental income Kerri kept.

¶ 41    At the conclusion of the trial, the court took the case under advisement. Eleven months later, on March 8, 2013, the trial court entered a supplemental judgment on all remaining issues. The court found that Kerri had exclusive control over the rental property. She collected 24 rent payments from the tenant from May 2010 through the foreclosure on the property, totaling $12,000. She only applied $3,121 toward the mortgage payments during this period. The bank foreclosed on the property. The court found that there was no testimony concerning any deficiency, Kerri did not account to Jeffrey for the remaining $8,879 she kept in rental payments, and the rent receipts were marital property. The court awarded Jeffrey his marital share of the rental payments amounting to $4,439. It found that although Kerri was given the right to receive the rental payments by court order, that did not extinguish Jeffrey's marital interest in the proceeds. The court offset his share against the $5,676.94 entered against him and in favor of Kerri in the September 30, 2011, order.

¶ 42    The court found that "testimony indicated that at the time Shivers closed there was $22,000 in the bank account" and that bills were still due and owing. Kerri denied that she used any of the money from that account for personal purchases. As of February 28, 2012, the balance was $8,000. Shivers never made a profit. The bank foreclosed on the property. The court found that there was no evidence to support that Kerri improperly

12

used funds from the Shivers account up to February 28, 2012. It denied the claim for dissipation up to that date. The court awarded Jeffrey one-half of the $8,000 balance in the Shivers account.

¶ 43 The court found that Kerri admitted scrapping vehicles and other items from the marital home without Jeffrey's consent in violation of the January 29, 2010, order. Jeffrey valued the scrapped items at $2,000 and the corn furnace still in Kerri's possession at $2,000. The court awarded Jeffrey $1,000 as his marital interest in the scrapped items plus $1,000 for his marital interest in the corn furnace. The amounts awarded to Jeffrey were to be offset against the amount he owed Kerri satisfying the judgment in full with a balance owed from Kerri to Jeffrey of $3,995.68 to be paid at a rate of $100 per month beginning on April 1, 2013.

¶ 44 The court noted that each spouse made claims that the other removed or took possession of items of personal property. The court ordered that, aside from items specifically mentioned in the order, each party was to retain the items in his or her possession free and clear of any claim by the other and any other relief claimed was denied. Jeffrey was to receive his one-half of the 2010 tax refund from the escrow account. Kerri had already received her share.

¶ 45 The court found that "[t]he parties' financial standing does support the cost of private school tuition and if [Kerri] elects to continue private school, she shall be solely responsible for the tuition." Permanent child support was set at $220 per week retroactive to May 2012. Kerri was ordered to maintain health insurance coverage on the children, and Jeffrey was to reimburse her one-half of the premiums. The parties were to

each pay one-half of the uninsured medical expenses. Each party was awarded all right, title, and interest in his or her respective pensions free from claim by the other.

¶ 46 On April 5, 2013, Kerri filed a posttrial motion. She asserted that the court awarded each party his or her own pension plans free from any claim by the other when the parties had stipulated that each would receive one-half of the marital portion of all pension plans and retirement benefits. She requested that the court modify its order to indicate that she owed Jeffrey nothing for the rental monies received during the pendency of the matter. She asserted that most of the $8,000 in the Shivers account was needed to pay additional bills and that only $363.93 remained to be divided between the parties. She requested that the court modify its order to reflect that she owed Jeffrey nothing from the Shivers account. She also urged the court to modify its order to indicate that she owed Jeffrey nothing for the personal property she took during the pendency of this matter. She asked that the court reinstate the sum owed to her from Jeffrey as $6,443.53 for arrearages and accrued interest and order that the tax refund of $4,536.50 be turned over to her. Kerri asked that the court order Jeffrey to pay one-half of the tuition and fees for the children to attend private school retroactive to the 2010-2011 school year. She asked that child support of $220 per week be made retroactive to October 21, 2011. She argued that, in the past, Jeffrey had always provided health insurance for the children and that he testified as to a willingness to continue this. She asked that the order be modified to make Jeffrey responsible for the children's health insurance.

¶ 47 On May 13, 2013, Jeffrey filed a suggestion of bankruptcy.

¶ 48 On May 13, 2013, the trial court held a hearing on Kerri's posttrial motion.

Arguments were presented, but no evidence or testimony was presented. The court took the motion under advisement.

¶ 49   Eight months later, on January 8, 2014, the trial court entered an order on Kerri's posttrial motion, which substantially modified the original order. The court modified the retirement plan award to accept the parties' stipulation that each party was to be awarded one-half of the marital portion of any retirement benefits accrued by each of them during the marriage. The court noted that the May 11, 2010, order gave rental property income to Kerri and provided that she pay mortgage and insurance payments, but that there was no provision obligating her to provide an accounting or to use rental payments exclusively for mortgage payments and insurance premiums. The court ordered that Kerri owed no sums to Jeffrey for past due rental payments. The court found that there were no funds remaining in the Shivers account to be divided by the parties, and, therefore, Kerri owed Jeffrey no sums from that account. The court found that Kerri owed Jeffrey $2,000 and that Jeffrey owed Kerri $5,676.94, which when offset left a balance of $3,676.94 owed by Jeffrey to Kerri. The court modified the provision about private school tuition and ordered Jeffrey to be responsible for 50% of the tuition and fees for the children's private school retroactive to the 2010-2011 school year. The court modified the child support order and set Jeffrey's obligation at $220 per week retroactive to October 21, 2011. The court ordered Jeffrey to maintain health insurance on the children based on his testimony that he traditionally maintained health insurance on the children through his union and that he was willing to continue to do so. The court ordered that summer care and daycare expenses for the children be shared equally by the

15

parties retroactive to the date of the filing of the proceedings.

¶ 50    Jeffrey filed a timely notice of appeal.

¶ 51                                    ANALYSIS

¶ 52    Jeffrey argues that the trial court erred by not ruling on a pending contempt motion and by failing to compel Kerri to provide an accounting as ordered. He argues that pursuant to the May 11, 2010, order, Kerri was to provide an accounting of all income and expenses for Shivers. On July 27, 2010, she was given three weeks to account for income and expenses regarding Shivers and the rental property. On October 26, 2010, Jeffrey filed a petition for rule to show cause and citation for contempt complaining that Kerri had failed to file an accounting within three weeks of the July 27, 2010, order. On December 4, 2010, Jeffrey's attorney sent Kerri's attorney a discovery request asking for documentary records showing income and expenses for the rental property and Shivers. On February 7, 2011, he filed a motion to compel compliance with discovery and for the imposition of sanctions for noncompliance. Jeffrey also filed a request to admit genuineness of documents to confirm that Kerri had received the rent checks from the tenant. Jeffrey asserts that instead of answering the request, Kerri filed "stock objections." On January 13, 2012, Jeffrey filed a motion for hearing on respondent's objections to request to admit genuineness of documents. Jeffrey argues that the trial court erred in failing to rule on his petition for rule to show cause and citation for contempt for Kerri's failure to provide an accounting. He argues that the court erroneously stated that Kerri had "no obligation of accounting or obligation that the rental payments be used exclusively for the mortgage and insurance," and that the court

sanctioned Kerri's failure to provide an accounting for Shivers by finding that there was no evidence to support that she improperly used funds from the Shivers account.

¶ 53 Kerri admitted that, on July 27, 2010, she was ordered to provide an accounting for the income and expenses for Shivers and the rental property. She testified that she provided an accounting to her attorney comprised of accounts receivable paperwork from her accountant's office and copies of checking account statements. Jeffrey testified that he never received an accounting. No accounting appears in the record, and no accounting was offered into evidence at trial.

¶ 54 Kerri argues that Jeffrey waived the issue of the trial court's failure to rule on the petition for rule to show cause because he failed to file a position statement in violation of Third Judicial Circuit Court Local Rule 2.06 (eff. June 28, 2006) prior to trial making it clear to the court that he believed that the petition for rule to show cause remained pending.

¶ 55 The party filing a motion has the responsibility to bring it to the attention of the trial court to have it resolved. *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr., & Co.*, 349 Ill. App. 3d 178, 187 (2004). Unless it appears otherwise, where no ruling has been made on a motion, we will presume that the motion was waived or abandoned. *Id.*

¶ 56 The first matter addressed at the hearing on April 5, 2012, was Kerri's motion *in limine*. In the motion, she sought to exclude any and all reference to any rental income she received. Jeffrey argued that the July 27, 2010, order required Kerri to account for income and expenses for Shivers and the rental property within three weeks and that no accounting was ever provided. He asserted that Kerri dissipated the marital estate by

17

taking money and failing to pay the bills. The trial court denied the motion *in limine*. Jeffrey did not abandon the issue of an accounting, and he brought it to the court's attention at the start of the trial.

¶ 57    Kerri argues that the trial court addressed the issue of the accounting by finding that she did not improperly use the funds from the Shivers account up to February 28, 2012, and that she had no obligation to account for the rental income or to use it exclusively for mortgage and insurance payments. She asserts that Jeffrey simply does not agree with the court's findings.

¶ 58    The issue of the failure to provide an accounting is closely tied to the issue of dissipation. "An enormous potential for prejudice lies if financial information is missing due to respondent's failure to comply with discovery." *In re Marriage of Barnett*, 344 Ill. App. 3d 1150, 1153 (2003). If expenditures are not adequately documented by the party charged with dissipation, courts will affirm a finding of dissipation. *In re Marriage of Awan*, 388 Ill. App. 3d 204, 215 (2009). Without an accounting of how Kerri spent marital funds, it cannot be determined whether the funds were used for her personal benefit to the detriment of the marital estate or for a purpose related to the marriage.

¶ 59    Jeffrey argues that the trial court erred by failing to find that Kerri dissipated marital assets. The trial court's determination on dissipation should be reviewed under a manifest weight of the evidence standard of review because it is a factual determination. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-700 (2006). A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record or the finding is arbitrary, unreasonable, or not based on the evidence. *In re*

18

*Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 107.

¶ 60    Kerri argues that Jeffrey never filed a notice of claim of dissipation or a position statement as required by the Third Judicial Circuit Court rules and, as a result, any claim he has for dissipation is waived.  She cites *Zito v. Zito*, 196 Ill. App. 3d 1031 (1990), in support of her argument.  However, *Zito* is distinguishable.  In *Zito*, the husband argued on appeal that the trial court abused its discretion by failing to consider his wife's dissipation of assets in dividing the marital property.  *Id*. at 1036.  The wife argued that the husband waived his claim of alleged dissipation.  *Id*.  The court found that the husband waived the issue of dissipation because at no time did he suggest to the trial court that the wife used funds for a nonmarital purpose or otherwise raise the issue of dissipation, and he failed to file a required pretrial memorandum despite the trial court's specific instruction that he do so.  *Id*.  In the instant case, Jeffrey raised the issue of dissipation.

¶ 61    *In re Marriage of Davis*, 215 Ill. App. 3d 763 (1991), provides guidance.  In *In re Marriage of Davis*, the wife contended on appeal that the trial court's decision that her husband had not dissipated marital property was against the manifest weight of the evidence and should be reversed.  *Id*. at 777.  The husband argued that the wife waived the claim of dissipation in a pretrial memorandum and raised it for the first time in closing argument.  *Id*.  The appellate court found that the record supported that the husband knew from the start of the trial that the wife intended to raise the issue for the court to consider and that the husband failed to object to the issue being raised during opening statement or when evidence concerning the dissipation of assets was presented.

19

*Id.* The court found that although the wife failed to check a box in a pretrial memorandum indicating that dissipation of marital assets was at issue, she did not waive the issue. *Id.*

¶ 62 Similarly, in the instant case, while Jeffrey did not file a position statement raising the issue of dissipation, the record supports that Kerri knew from the start of the trial that Jeffrey intended to raise the issue for the court to consider. As early as October 26, 2010, Jeffrey filed a petition for rule to show cause and citation for contempt for Kerri's failure to account for income and expenses relating to Shivers and the rental property as ordered on July 27, 2010. On October 24, 2011, Jeffrey filed a petition to modify temporary child support. In the petition, he alleged that Kerri dissipated business funds and asked the court to assess an obligation against Kerri for dissipation of the marital estate. On February 23, 2012, Jeffrey filed a petition for adjudication of indirect civil contempt alleging that Kerri had failed to comply with the January 29, 2010, injunctive order restraining the parties from disposing of any marital assets. At the beginning of the trial, Jeffrey's counsel identified that dissipation was at issue. Kerri failed to object to the raising of the issue of dissipation at that time or when evidence concerning dissipation of assets was presented. Kerri was well aware that dissipation was an issue. The issue of dissipation is not waived by Jeffrey's failure to file a position statement identifying that dissipation was an issue at trial.

¶ 63 Kerri asserts that Jeffrey failed to file a notice of intent to claim dissipation as required under section 503(d)(2) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d)(2) (West 2012)). However, the notice of intent to claim dissipation

20

provision was added by Public Act 97-0941, which did not become effective until January 2013, after the trial in this matter.

¶ 64   Kerri argues that there was insufficient testimony and evidence that any dissipation occurred as to Shivers or the parties' rental property.  She asserts that the February 4, 2011, order relieved her of any obligation to continue to make mortgage payments and allowed her to keep the rent from the rental property.  She contends that she cannot be charged with dissipation because the order contemplated that no payments would be made on Shivers or the rental property.

¶ 65   The February 4, 2011, order provided that "[t]he parties' court ordered obligations to pay mortgages and bills is modified so that they do not have a court ordered obligation to pay them, including order for Jeff to pay $300 for day care."  It also provided that "Kerri shall be entitled to retain the rental income free of claim of Jeff pending further order."  The court order only provided that there was no court-ordered obligation to pay the mortgages; it did not relieve Kerri of the obligation to pay the mortgage.

¶ 66   "Dissipation refers to a spouse's use of marital property for his or her sole benefit for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Hubbs*, 363 Ill. App. 3d at 700.  Whether a spouse has dissipated assets depends on the facts of each case.  *Id*.  The party charging dissipation should make a preliminary showing of dissipation before the burden shifts to the party charged with dissipation to refute the accusations.  *In re Marriage of Manker*, 375 Ill. App. 3d 465, 476-77 (2007).  Once a *prima facie* case for dissipation has been made, the burden shifts to the party charged with dissipation to prove by clear and

21

specific evidence how the funds were spent. *Id*. at 477.

¶ 67　The concept of dissipation is premised upon waste. *In re Marriage of Miller*, 342 Ill. App. 3d 988, 994 (2003). Dissipation involves the diminution in the marital estate's value due to a spouse's actions. *Id*. An act may constitute dissipation even though a spouse does not necessarily derive a personal benefit from it if the expenditure has some detrimental effect upon the marital estate. *Id*. A court can find dissipation of assets where a spouse's use of marital funds for her own living expenses is so selfish, excessive, and improper as to constitute an outright waste of marital funds. *In re Marriage of Carter*, 317 Ill. App. 3d 546, 551-52 (2000).

¶ 68　Kerri had exclusive control over Shivers, the rental property, and the marital home. She failed to pay the mortgages on any of the property. She resided in the marital home. She did not pay the insurance on the house, and it was damaged in a fire. The renter paid $500 per month in rent, and the monthly mortgage payment on the rental property was $390.10. Kerri collected all the income from Shivers and the rental property. Kerri failed to pay the mortgages on the properties resulting in all the property being lost to foreclosure. This caused a diminution in the marital estate. Because Kerri caused a diminution in the marital estate by her actions, she had the burden to show clear and specific evidence as to how the marital funds were spent. See *In re Marriage of Hubbs*, 363 Ill. App. 3d at 700.

¶ 69　Vague and general testimony that marital assets were used for marital expenses is inadequate to meet the spouse's burden to show by clear and specific evidence how funds were spent, and the trial court is required to find dissipation when the spouse charged

with dissipation fails to meet that burden. *In re Marriage of Carter*, 317 Ill. App. 3d at 552.

¶ 70 Kerri only provided vague and general statements about how the money was spent. She testified that the money was spent to wind down Shivers and that the rental income was used for living expenses such as "groceries, clothes, haircuts, tuition for [her] kids, before and after school care, daycare for the summer." Kerri admitted that she did not pay the $1,250 monthly mortgage payments for 10 months even though she could have done so. When asked what she did with the money she saved by not paying the mortgage, she stated that she used part of it to pay her attorneys. "Expenditures for attorney fees out of marital assets are a dissipation of marital assets." *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 464 (1994). Kerri could not remember where she spent the rest of the money. Kerri's vague and general statements about how she spent the money from Shivers, the rental property, and the money she should have paid on the marital home mortgage do not meet her burden to show by clear and specific evidence how the funds were spent. See *In re Marriage of Carter*, 317 Ill. App. 3d at 551-52. Therefore, the trial court's decision that the funds were not dissipated is against the manifest weight of the evidence. Because the record supports a finding that Kerri dissipated marital assets, we reverse and remand.

¶ 71 "In dividing marital property, the trial court is required to consider the dissipation of the value of marital and nonmarital property." *In re Marriage of Zweig*, 343 Ill. App. 3d 590, 595 (2003). In order to determine the amount of assets dissipated, Kerri will need to provide an accounting of how the monies were spent. Jeffrey argues that the trial

23

court erred in ordering him to pay one-half of the cost of private school tuition. A reexamination of whether Kerri dissipated assets could impact the division of marital property and the parties' abilities to pay private school tuition and, therefore, the issue should be considered on remand. Upon remand, the trial court should reconsider the distribution of marital assets and liabilities in light of Kerri's dissipation of marital assets.

¶ 72    Finally, we feel that we must comment on the lengthy delays in this case during which the trial court had this matter under advisement. After the case was tried, the court waited 11 months before rendering a decision. When a posttrial motion was then filed and heard, the court had the case under advisement for eight additional months before deciding the motion. Thus, 19 months of the 4 years this case was pending were spent waiting for the trial judge to make a decision. Litigants in our courts are entitled to a prompt disposition of their cases. We trust that, upon remand, the court will exercise diligence to determine the remaining issues in this case.

¶ 73                              CONCLUSION

¶ 74    For the foregoing reasons, we reverse the trial court's order entered January 8, 2014, and remand for further proceedings consistent with this decision.


¶ 75    Reversed and remanded.

¶ 76    PRESIDING JUSTICE CATES, specially concurring.

¶ 77    I concur in the opinion. I write separately because I believe it is important to admonish the parties that the supreme court rules, including the rules of discovery, are not aspirational, they have the force of law and carry the presumption that they will be

both obeyed and enforced as written. *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). A number of issues arose during the course of discovery, as is often the case in contested divorce cases, that were either not brought to the attention of the trial court or not ruled upon once presented. Pretrial discovery is intended to enhance the truth-seeking process, to enable attorneys to better prepare for a trial, to eliminate surprise and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties. *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997). If these purposes are to be fulfilled, the parties must not be permitted to flout the discovery rules without consequence, and the trial court must enforce the rules. The trial court has broad discretion in ruling on discovery matters, and its rulings will not be disturbed absent an abuse of discretion. *D.C.*, 178 Ill. 2d at 559. That said, a trial court's failure to rule on discovery disputes, in my view, is not an exercise of discretion, but an abdication of it. I trust, on remand, that the parties will comply with the rules of discovery, and that the trial court will exercise due diligence not only in determining the remaining issues in the case, but also in ruling on discovery disputes that are presented to it.

2015 IL App (5th) 140062

NO. 5-14-0062

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JEFFREY P. BROWN, | ) | Madison County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 10-D-75 |
| | ) | |
| KERRI L. BROWN, | ) | Honorable |
| | ) | David Grounds, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**     June 15, 2015

_____

**Justices:**     Honorable Bruce D. Stewart, J.

      Honorable James R. Moore, J., concurred
      Honorable Judy L. Cates, P.J., specially concurred

_____

**Attorney**     David M. Fahrenkamp, Law Offices of David M. Fahrenkamp, 205
**for**     North Second Street, P.O. Box 625, Edwardsville, IL 62025
**Appellant**

_____

**Attorneys**     Kathleen A. Buckley, Bridget T. Buckley, Taliana, Buckley & Asa,
**for**     216 North Main Street, P.O. Box 627, Edwardsville, IL 62025
**Appellee**

_____