NOTICE

Decision filed 02/01/06. The text of
this decision may be changed or
corrected prior to the filing of a
Petition for Rehearing or the
disposition of the same.

NO. 5-05-0013

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

_____

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the |
| | ) Circuit Court of |
| PEGGY S. HUBBS, | ) St. Clair County. |
| | ) |
| Petitioner-Appellee, | ) |
| | ) |
| and | ) No. 03-D-111 |
| | ) |
| MARK HUBBS, | ) Honorable |
| | ) Walter C. Brandon, Jr., |
| Respondent-Appellant. | ) Judge, presiding. |

_____

_____

JUSTICE WELCH delivered the opinion of the court:

The respondent, Mark A. Hubbs, appeals a judgment of dissolution that dissolved his marriage to the petitioner, Peggy S. Hubbs. On appeal, Mark challenges the circuit court's division of marital property and the circuit court's award of child support. For the reasons that follow, we affirm.

On October 10, 1987, Mark and Peggy were married. Three children were born to the marriage: Trevor (born April 20, 1990), Hillary (born April 6, 1992), and Adam (born May 26, 1995). In July 2002, the marriage began an irreconcilable breakdown. On February 10, 2003, Peggy filed a petition to dissolve the marriage.

On June 16, 2004, the parties entered into a joint parenting agreement, wherein the parties agreed to share the custody of the children. The agreement further provided that Peggy would be the primary residential custodian for Hillary and Adam and that Mark would be the primary residential custodian for Trevor.

1

On June 21, 2004, a hearing was conducted to address all the remaining issues. At the hearing, each party presented evidence of his or her assets, liabilities, current employment, recent expenses, and current living expenses. After hearing the evidence, the circuit court took the matter under advisement.

On August 31, 2004, the circuit court entered a judgment dissolving the marriage. In the judgment, the circuit court awarded Mark $363,298 in marital assets and awarded Peggy $409,684 in marital assets. The circuit court ordered Mark to pay $1,167 per month in child support, and to the extent that Mark's annual gross income exceeds $115,000 in any calendar year, Mark has been ordered to pay Peggy 13% of all excess gross income as additional child support.

On September 28, 2004, Mark filed a posttrial motion asking the circuit court to reconsider its judgment. The circuit court denied Mark's motion. Mark now brings this appeal.

The first issue raised by Mark on appeal is whether the circuit court erred in dividing the marital property. The circuit court awarded Mark 47% of the marital property and awarded Peggy 53% of the marital property. Mark's award of marital property included, *inter alia*, $65,318 representing marital assets dissipated by Mark, a 1995 Cruisers 2970 Rogue boat that the circuit court valued at $41,450, and a Kubota tractor that the circuit court valued at $14,000. On appeal, Mark challenges the circuit court's finding that Mark dissipated $65,318 worth of marital assets, the circuit court's valuation of the 1995 Cruisers Rogue boat, and the award of the Kubota tractor. In addition, Mark contends that an award of 53% of the marital property to Peggy and 47% of the marital property to Mark was in error. We shall address each of these arguments in turn, but before doing so, we shall set forth the appropriate standard of review, which is disputed by the parties.

On appeal, Mark contends that the circuit court's findings of dissipation, of the value of certain marital property, and of the ultimate division of marital property are to be reviewed under a manifest-weight-of-the-evidence standard. To the contrary, Peggy asks that we review these claims under an abuse-of-discretion standard. Each party cites authority for his or her proposed standard of review.

Recently, our brethren in the Second District have tried to bring clarity to the appropriate standard for the review of circuit court decisions pertaining to dissipation, the valuation of property, and the ultimate division of marital property. In *In re Marriage of Vancura*, 356 Ill. App. 3d 200 (2005), the appellate court noted that both a manifest-weight-of-the-evidence standard of review and an abuse-of-discretion standard of review have been applied by the appellate court when reviewing decisions by the circuit court on the above-stated topics. See *In re Marriage of Zweig*, 343 Ill. App. 3d 590, 596 (2003) (an abuse-of-discretion standard of review was applied to the circuit court's determination of dissipation); *In re Marriage of Rai*, 189 Ill. App. 3d 559, 565 (1989) (a manifest-weight-of-the-evidence standard was applied to the circuit court's determination of dissipation); *In re Marriage of Heinze*, 257 Ill. App. 3d 782, 791 (1994) (an abuse-of-discretion standard of review was applied to the circuit court's valuation of assets); *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 736 (2002) (a manifest-weight-of-the-evidence standard of review was applied to the circuit court's valuation of assets); *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 658 (1998) (an abuse-of-discretion standard of review was applied to the circuit court's division of marital property); *In re Marriage of Koberlein*, 281 Ill. App. 3d 880, 886 (1996) (a manifest-weight-of-the-evidence standard of review was applied to the circuit court's division of marital property). After providing some insight into the differing standards of review, our brethren ultimately concluded that

the review of a circuit court's determinations on dissipation and the valuation of marital property should be conducted under a manifest-weight-of-the-evidence standard of review and that the review of the circuit court's determination on the ultimate division of marital property should be conducted under an abuse-of-discretion standard of review. The reason for this is that the issues of dissipation and the valuation of marital assets are generally factual determinations to which a manifest-weight-of-the-evidence standard of review is generally applicable. On the other hand, the circuit court's decision on the ultimate division of marital property depends upon a circuit court's view of the facts in conjunction with prevailing relevant statutory factors, and so the circuit court is accorded more discretion when making this determination, resulting in an abuse-of-discretion standard of review being more appropriate. *In re Marriage of Vancura*, 356 Ill. App. 3d at 205. We agree with the analysis and conclusions regarding the appropriate standards of review set forth by the court in *In re Marriage of Vancura* and shall apply them accordingly.

We turn now to the first argument raised by Mark on appeal–whether the circuit court erred in finding that Mark dissipated $65,318 worth of marital assets. Dissipation refers to a spouse's use of marital property for his or her sole benefit for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. *In re Marriage of Miller*, 342 Ill. App. 3d 988, 994 (2003). Whether a party has dissipated marital assets depends upon the facts of a particular case. *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 983 (1992). "The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the marital funds were spent." *In re Marriage of Tietz*, 238 Ill. App. 3d at 983. If the expenditures are not documented adequately by the party

4

charged with dissipation, courts will affirm a finding of dissipation. *In re Marriage of Tietz*, 238 Ill. App. 3d at 984. General and vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. *In re Marriage of Tietz*, 238 Ill. App. 3d at 984.

In the instant case, the $65,318 figure constituting dissipation consists of the following: (1) $41,558 is derived from an exhibit submitted by Peggy that indicates that Mark's income from July 1, 2002, to June 15, 2004, was $41,558 more than his stated expenses, (2) $12,000 is based on a loan that Mark allegedly received from his father during the marriage that Mark allegedly repaid with nonmarital funds, and (3) $11,760 is for expenses associated with a boat and jet ski purchased during the irreconcilable breakdown of the marriage. We address each of these findings in turn.

First, Mark contends that the circuit court erred in finding that Mark dissipated $41,558 of marital assets. In the judgment of dissolution, the circuit court found, based on an exhibit submitted by Peggy, that Mark earned a gross income of $276,538 from July 1, 2002, to June 15, 2004. However, the circuit court found that Mark had set forth expenditures of only $234,979 during that period. The circuit court found that the remaining $41,558 represented "unexplained expenditures" and that, therefore, that amount constitutes dissipation.

On appeal, Mark argues that the exhibit used by the circuit court regarding his expenditures failed to list all the expenditures incurred by Mark during that period. For example, Mark contends that the exhibit excluded his payment of 2003 real estate taxes in the amount of $4,400, his payment of 2004 real estate taxes in the amount of $4,600, his expenses related to homeowner's insurance in the amount of $1,644, and other additional expenses, such as life insurance premiums, recreation,

5

religious contributions, and vacation, which total approximately $11,000. Mark contends that many of these expenses were stated in other exhibits and that the circuit court erred in failing to include these legitimate expenses when finding that dissipation had occurred.

In response, Peggy contends that the exhibit relied upon by the circuit court was based upon an exhibit prepared by Mark and that therefore Mark cannot now complain. Further, Peggy argues that Mark has the burden to show the circuit court all his legitimate expenses and that the circuit court is not required to sift through the record to find any and all possible legitimate expenses. Peggy points out that at the hearing, Mark was asked, "Is there anything that seems to be missing from [the exhibit submitted by Peggy and relied on by the circuit court regarding Mark's expenditures] that is not included in this as far as how monies have been expended during that time period?" Mark responded, "Not that I can–No." Peggy contends that because Mark did not show by clear and specific evidence that he did not dissipate these assets, Mark failed to meet his burden and the circuit court's finding should be affirmed.

We agree with Peggy. The circuit court based the dissipation amount on an exhibit that Mark acknowledged at the hearing fairly showed how his monies had been spent since the irreconcilable breakdown of the marriage. Although Mark now contends that the circuit court should have considered other potentially legitimate expenses that might be found by a thorough search of the evidence presented, Mark had the burden to clearly set this evidence before the circuit court, and the circuit court was not saddled with this burden. Once Mark acknowledged that the exhibit presented by Peggy was accurate, the circuit court was not required to question his testimony and search the record for other possible expenses. The circuit court is

6

required to find dissipation where the charged party fails to meet his burden of showing that marital funds were used for marital purposes. *In re Marriage of Carter*, 317 Ill. App. 3d 546, 552 (2000). Because Mark failed to meet his burden, we do not find that the circuit court's determination that Mark dissipated $41,558 worth of marital assets is against the manifest weight of the evidence.

Next, Mark contends that the circuit court erred in finding a dissipation of $11,760, which consisted of expenses associated with his use of a boat and a jet ski after the parties separated. The evidence presented at the hearing shows that after the marriage had undergone an irreconcilable breakdown, Mark purchased a 29-foot boat and a jet ski. Although Peggy had been on the boat between two and five times, she had always been on the boat in the presence of Mark. In fact, Peggy could not operate the boat by herself. In addition, the evidence reveals that Mark's female companion had been on the boat on a much more regular basis than Peggy. On appeal, Mark essentially claims that because Peggy was on the boat a couple of times, it is error for the circuit court to find that Mark purchased the boat for his "sole" benefit. We do not believe, based on the facts presented, that the circuit court's finding that Mark purchased the boat and the jet ski for his personal benefit is against the manifest weight of the evidence. Merely because Peggy was on the boat a couple of times does not mean that the circuit court cannot find that Mark did not purchase the boat for his sole benefit. In light of the record in this case, the circuit court's finding that Mark's purchases of the boat and the jet ski constituted dissipation was not against the manifest weight of the evidence.

Next, Mark contends that the circuit court erred in finding that Mark dissipated marital assets in the sum of $12,000, involving a loan made by his father. In an order dated September 25, 2003, the circuit court awarded Peggy and Mark each

$63,841.89, which constituted a share in the proceeds from the sale of their marital residence. At the hearing, Mark testified that after receiving this award, he repaid his father a $12,000 loan that he had received during the marriage. No documentary evidence of the loan was presented, and apart from Mark's testimony, there is no evidence that the loan was actually repaid to Mark's father. Thus, the existence and repayment of the "loan" hinges on the circuit court's determination of Mark's credibility. See *In re Marriage of Pittman*, 212 Ill. App. 3d 99, 102 (1991). We believe that the circuit court was entitled to conclude that the loan was made but never repaid, because Mark has failed to present any evidence of either, apart from his testimony. We therefore reject Mark's assertion that the finding that he dissipated $12,000 is against the manifest weight of the evidence.

Accordingly, we do not find that the circuit court's determination that Mark dissipated $65,318 in marital property is against the manifest weight of the evidence. We now turn to the issue of whether the circuit court erred in the valuation of certain property.

First, Mark challenges the circuit court's valuation of the 1995 Cruisers 2970 Rogue boat that was awarded to Mark. Mark contends that the circuit court erred in valuing the boat at $41,450, because that was the purchase price of the boat and not the value of the boat at the time of the dissolution of the marriage. Again, Mark purchased the boat after the marriage had begun an irreconcilable breakdown. Although the boat was purchased for $41,450, Mark testified that on the date of dissolution the boat was worth about $37,000. Mark contends that because the circuit court valued the boat as of the date of the purchase and not as of the date of the dissolution of the marriage, the circuit court's valuation of the boat was against the manifest weight of the evidence.

8

In response, Peggy acknowledges that marital property should be valued as of the date of dissolution and not as of the date of purchase. However, Peggy points out that the circuit court found that Mark had exclusive control of the boat and that the expenses associated with the boat constituted dissipation and that if the circuit court values the boat as of the date of the dissolution, then she not only suffers from the depreciated value of a nonmarital asset but also loses out on any interest that she would have gained if the money used to purchase the boat had stayed in a bank during that time. Accordingly, Peggy makes an equitable argument that the circuit court's valuation should be affirmed.

Although the circuit court specifically stated that its dissipation award did not include the money paid for the boat, the court awarded Mark the boat, valued it as of the date of the purchase, and found that the expenses associated with the boat constituted dissipation. Thus, it appears to us that the circuit court did in fact treat the money used to purchase the boat as a dissipated asset. This is supported by the circuit court's findings that Mark had exclusive control over the boat and that he has enjoyed the sole benefit of the boat to the exclusion of Peggy. Although the circuit court stated otherwise in the judgment, we find that the circuit court has treated the money used to purchase the boat as a dissipated asset, and therefore, awarding the boat to Mark at the purchase price is not against the manifest weight of the evidence.

Lastly, Mark contends that the circuit court erred in awarding him a Kubota tractor valued at $14,000. Mark contends that there is absolutely no testimony or competent evidence regarding the value of the tractor or even that the parties were in possession of the tractor at the time of the dissolution. Peggy counters that her financial statement, which was admitted into evidence, lists the tractor valued at

9

$14,000. Mark failed to present any evidence regarding the tractor. Because a financial statement is competent evidence of value (*In re Marriage of Block*, 110 Ill. App. 3d 864, 870 (1982)), we believe that the circuit court had sufficient evidence to value the tractor and conclude that it did exist. Accordingly, we do not believe that the circuit court's valuation of the tractor at $14,000 and its award are against the manifest weight of the evidence.

The last argument raised by Mark pertaining to the first issue he raises on appeal is whether the circuit court's award of 53% of the marital property to Peggy and its award of 47% of the marital property to Mark is in error. As stated above, we review the circuit court's ultimate distribution of marital assets under an abuse-of-discretion standard.

When dividing marital property, a circuit court is to consider the evidence in light of several factors set forth in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d) (West 2004)). These factors include:

"(1) the contribution of each party to the acquisition, preservation, or increase or decrease in value of the marital or non[]marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the dissipation by each party of the marital or non[]marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective ***;

* * *

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the

10

parties;

> (9) the custodial provisions for any children;

> (10) whether the apportionment is in lieu of or in addition to maintenance; [and]

> (11) the reasonable opportunity of each spouse for future acquisition of capital assets and income[.]"  750 ILCS 5/503(d)(1), (d)(2), (d)(3), (d)(4), (d)(5), (d)(8), (d)(9), (d)(10), (d)(11) (West 2004).

The circuit court has broad discretion to distribute marital assets, and mathematical equality is not required. *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107, 1113 (2004); *In re Marriage of Zweig*, 343 Ill. App. 3d at 599.

In the instant case, the following evidence was presented.  Throughout the marriage, Peggy was employed at A.G. Edwards.  At the time of the hearing, she was earning an annual salary of approximately $70,000, including a bonus.  Peggy was primarily responsible for providing the family with insurance throughout the marriage.  Mark has had several jobs during the marriage.  At the time of the hearing, his position, which he had held for only a couple of months, was with Gundaker Commercial Group (Gundaker) as a salesman, where his income was based solely on commissions.  He has had previous success in this line of work, as his employment with Paric Corp. (Paric) during 2003 yielded a gross salary of approximately $169,000.  Mark acknowledged that he recently had been offered another position which would have paid an annual salary of $120,000 plus a potential bonus, but he felt that Gundaker offered a better future.  Finally, Peggy is the primary residential custodian of two of the three children and she was not awarded maintenance.

On appeal, Mark contends that the circuit court erred in failing to divide the

11

marital property equally. Mark contends that the circumstances of the parties are nearly identical (*i.e.*, they are the same age, both have bachelor degrees, and both have worked full-time throughout the marriage) and that therefore a nearly identical award would be just.

After thoroughly reviewing the record, we cannot say that the circuit court's award of marital property was an abuse of discretion. The record demonstrates that Mark has a greater income than Peggy, Peggy is the primary residential parent of two of the children, and there is no award of maintenance. We point out that an award of 47% to Mark and 53% to Peggy is not too far from a nearly equal division of marital property, and in light of the relevant statutory factors, we cannot conclude that the circuit court abused its discretion in dividing the marital property. Accordingly, we affirm the circuit court's division of marital property.

The second issue raised by Mark on appeal pertains to the circuit court's award of child support. In its judgment, the circuit court noted that it considered Mark's past employment, the circumstances in which his employment with Paric ended, his current employment, and his earning capacity, and it found that child support should be based on a statutory net income of $70,000 per year. The court noted that Mark had an annual average income of $125,000 over the previous four years, and it found that Mark's earning capacity is $115,000 per year. The circuit court then found $15,000 in expenses necessary for the production of income, and after deducting taxes, the circuit court reached the $70,000 net income figure to which it applied the statutory guideline. The circuit court added that if Mark's gross income exceeds $115,000 in any calendar year, he shall pay Peggy 13% of all gross income above $115,000.

On appeal, Mark makes several arguments within this issue. First, Mark

contends that the circuit court erred in imputing his income rather than basing the child support award on Mark's current net income. Second, Mark contends that the circuit court failed to deduct all of Mark's necessary expenses for the production of income. Third, Mark argues that the circuit court failed to deviate downward from the guidelines.

The evidence presented at the hearing reveals that Mark's income is based solely on commissions. Although Gundaker advances Mark $7,500 a month, these advances are merely loans that carry 5% annual interest and will be repaid from Mark's commissions. The evidence revealed that Mark is responsible for any and all expenses related to the production of income. Mark contends that in light of his business expenses and the deductions allowed by section 505 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505 (West 2004)), his net income will be $2,367 per month. He argues that it is from this figure that the circuit court should have rendered a child support award. This figure is apparently derived by treating the $7,500-per-month advance from Gundaker as his "salary", even though Mark acknowledges that his future income is uncertain because it is based on commissions. Keeping this in mind, we now turn to the arguments raised by Mark in this issue on appeal.

Mark's first argument pursuant to this issue is that the circuit court erred in imputing a gross income of $115,000 per year to Mark.[1] Mark argues that the circuit court should have awarded support as a percentage of his current net income and

---

[1] Although Mark specifically contends that the circuit court erred in imputing a net income of $70,000, it is essentially the imputation of gross income that he is challenging in this argument.

should not have imputed an amount. We find that the circuit court did not err in imputing a gross income of $115,000 to Mark.

Where it is difficult to ascertain the net income of a noncustodial spouse, the circuit court may consider past earnings in determining the noncustodial spouse's net income for purposes of making a child support award. *In re Marriage of Karonis*, 296 Ill. App. 3d 86, 92 (1998). Using an average income for the previous three years of employment is a reasonable method for determining net income where income has fluctuated widely from year to year. *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 655 (1998).

Mark's income for the previous three years was $133,000, $114,009, and $169,319, respectively. Mark also testified that he had recently rejected a job offer that would have paid him a salary of $120,000 a year. We believe that based on the evidence in this case, the circuit court acted properly in imputing Mark's gross income at $115,000. This figure is slightly below his average income for the previous three years and slightly below a salary that he could have earned had he accepted another position. Although the circuit court could have required Mark to pay a percentage of his net income to Peggy, we believe that it acted properly in determining gross income to be $115,000.

Mark's second argument within this issue is that the circuit court erred in determining that Mark's reasonable and necessary business expenses for the production of income are $15,000 per year. Mark claims that his expenses would be $28,416 per year and testified to that at the hearing. Mark argues that the circuit court erred by not accepting his figure.

Although Mark presented evidence at the hearing that his reasonable and necessary expenses would be more than $28,000, the record shows that his

14

expenses the two previous years were $23,961 and $12,038, respectively. Mark testified that these expenses included an annual trip to Las Vegas with 20 of his friends (although his friends pay their own way) and a trip to Florida where he took his female companion. Because the circuit court is entitled to conclude that some of these expenses were a mixture of business and personal, it was entitled to not accept Mark's proposed figure. Based on its order, the circuit court concluded that not all the business expenses alleged by Mark were reasonable and necessary for the production of income. Upon reviewing the record, and noting that these determinations hinge on the circuit court's credibility determinations and its evaluation of the evidence, we do not believe that the trial court erred in concluding that $15,000 constituted a sufficient amount for reasonable and necessary business expenses.

Mark's third and final argument within this issue is that the circuit court erred by failing to deviate from the statutory child support guidelines. Mark argues that Peggy's income alone provides a significant resource for the children and that because each party has an above-average income, the large award of child support from Mark results in a windfall.

A circuit court is justified in awarding child support below the guideline amount where the incomes of the parents are more than sufficient to provide for the reasonable needs of the parties' children (*In re Marriage of Lee*, 246 Ill. App. 3d 628, 643 (1993)). However, Mark fails to cite a case where the circuit court is required to do so. When dealing with a parent that has a high income, the circuit court must balance the concern that the child support award should not be a windfall with a concern for the standard of living that the children would have enjoyed absent the parental separation and the dissolution. *In re Marriage of Charles*, 284 Ill. App. 3d

15

339, 347 (1996). In light of the standard of living that the children would have enjoyed, child support is not to be based solely upon the shown needs of the child. *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 36 (1997). After reviewing the record, we do not believe that the circuit court's failure to deviate downward from the statutory guidelines constitutes an abuse of discretion. In fact, as Mark contends, his income will not be as high as it was the previous year, because he took a lower-paying position with a greater future earning potential. If that greater earning potential comes to fruition and it appears that the child support award has resulted in a windfall, then he is certainly entitled to file a petition for a modification. However, based on the circumstances presently before the court, we find no abuse of discretion.

Accordingly, the judgment of the circuit court is affirmed.


Affirmed.


HOPKINS and CHAPMAN, JJ., concur.

NO. 5-05-0013

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County. |
| PEGGY S. HUBBS, | ) |
| Petitioner-Appellee, | ) |
| | ) |
| and | ) No. 03-D-111 |
| | ) |
| MARK HUBBS, | ) Honorable<br>) Walter C. Brandon, Jr., |
| Respondent-Appellant. | ) Judge, presiding. |

---

**Opinion Filed**:    February 1, 2006

---

**Justices**:    Honorable Thomas M. Welch, J.

Honorable Terrence J. Hopkins, J., and
Honorable Melissa A. Chapman, J.,
Concur

---

**Attorney
for
Appellant**
P.K. Johnson V, Johnson & Johnson, 11 South High Street, Belleville, IL 62220

---

**Attorney
for
Appellee**
Robert E. Wells, Jr., Pessin, Baird & Wells, 105 North Illinois, P.O. Box L,
Belleville, IL 62222

---