NOTICE

Decision filed 11/03/23. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2023 IL App (5th) 220291-U

NOS. 5-22-0291, 5-22-0330 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| DEBBIE GRANT, | ) | Union County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 19-D-39 |
| | ) | |
| TODD GRANT, | ) | Honorable |
| | ) | Amanda Byassee Gott, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's determination was against the manifest weight of the evidence where it found that no testimony was presented on the value of the nonmarital assets and where it failed to value marital assets. The circuit court's determination of the respondent's income was an abuse of discretion for its maintenance calculation, and the marital property distribution was an abuse of discretion where the circuit court did not consider all of the statutory factors and failed to award an equitable distribution of the marital estate.

¶ 2     The petitioner, Debbie Grant, appeals the amount of spousal maintenance and the division of property granted to her by the circuit court of Union County, following a dissolution of her marriage to the respondent, Todd Grant. For the following reasons, we reverse and remand.

1

¶ 3                                    I. BACKGROUND

¶ 4      The petitioner, Debbie Grant, born June 30, 1963, and the respondent, Todd Grant, born April 6, 1962, married in Hawaii on December 31, 1994. In 1996, Todd and Debbie moved to Illinois. They have two adult children. Debbie was a homemaker and caregiver to their children during the marriage. Todd worked in the automotive industry as general manager of a car dealership during their marriage. In 2017, Todd became an instructor at Southern Illinois University (SIU) in the automotive school.

¶ 5      Debbie filed a petition for dissolution of marriage on June 17, 2019, alleging irreconcilable differences. On the same day, Debbie filed a motion for temporary relief requesting temporary maintenance. Debbie subsequently filed a motion to secure her potential maintenance award with the existing life insurance policy on Todd's life. Debbie argued that Todd had a pre-existing condition which would make a new policy prohibitively expensive.

¶ 6      On September 1, 2020, the circuit court granted the petitioner's motion for temporary relief. The circuit court granted temporary maintenance in the amount of $590 per month. Additionally, Todd's life insurance policy listing Debbie as the beneficiary was to remain in effect and Debbie was required to pay the premiums.

¶ 7      The circuit court held the two-day trial on November 15, 2021, and on January 14, 2022. The trial focused on the issues of the distribution of property, debts, and on the amount of spousal maintenance to be awarded to Debbie, as the parties agreed that Debbie was entitled to maintenance.

¶ 8      The parties agreed that their personal belongings had been divided and agreed to keep the belongings in their possession without presenting the value of those items. The parties specifically agreed that Debbie would receive the 2013 Toyota Highlander, and Todd would receive the 2011

2

Toyota Tacoma and a 2003 Kubota tractor. No values were provided for those vehicles. They additionally agreed that Todd would receive the 2008 Porsche Cayman valued at $27,000.

¶ 9 The parties had sold the marital home for approximately $240,000 while they were separated. They stipulated that $119,216 from the sale of the home was held in trust. Todd and Debbie each received $59,000 from the remaining proceeds. Todd argued that an agreement was made between the parties that the amount distributed from the sale of the home was to be excluded from the marital estate. Debbie argued that the distributed funds should be considered as part of the marital estate. The circuit court reviewed the docket entries and no orders had been entered or proposed regarding the marital residence.

¶ 10 The parties' most recent pay stubs were admitted into evidence. Todd filed account statements indicating the marital estate contained the following assets: Fidelity Investments $587,808.41, Fidelity Roth IRA $23,595.37, Dodge & Cox Funds $55,000.17, State Universities Retirement System (SURS) $69,684.05.

¶ 11 The parties, as well as a financial expert, Michelle Laws, provided testimony. Todd testified first, as an adverse witness, that in 2014, he inherited a 1/9th ownership interest of GHG, LLC. His interest in GHG, LLC was considered a nonmarital asset. GHG, LLC owned 7 acres of property where an auto dealership, Landmark Automotive, was located, and an additional 20 acres of unimproved land. Todd testified that he designed the GHG, LLC building, and in 1998 the value of the building was approximately $1.7 million. Todd further testified that his 1/9th interest in GHG, LLC was valued at $250,000.

¶ 12 Todd's cousin, Sean Grant, was the president of Landmark Automotive and Sean was a majority shareholder of GHG, LLC. Landmark Automotive leased the property from GHG, LLC, and Todd received $833 per month from the rental income. In June of 2020, Landmark Automotive

3

stopped paying rent because Covid negatively impacted the business. Todd testified that he was unaware whether Sean would resume paying rent, and no actions had been taken to enforce an agreement.

¶ 13 According to Todd's most recent paycheck from SIU, Todd's gross pay was $8206 a month for nine months of the year. Todd testified that his last paycheck was not a reflection of his base pay because he was temporarily compensated for teaching an extra class. In the future, compensation for additional classes may not be available.

¶ 14 In either March or April of 2018, Todd removed Debbie's name from their joint credit cards. Debbie subsequently acquired approximately $8000 in credit card debt.

¶ 15 Debbie testified that she began working in December of 2019 for Addus Homecare and earned $14 an hour. She testified that she was not qualified for any higher paying jobs based on her education, training, and experience. Prior to the marriage, Debbie worked as an administrative assistant for two years. Debbie had an associate's degree from Lincoln Land Community College.

¶ 16 Debbie testified that the parties had reached an agreement regarding the division of personal property, excluding the division of the bank account funds. After the marital residence was sold, Debbie received $59,000, but there was no discussion or agreement on how the money would be accounted for in the dissolution proceeding. Debbie used the proceeds from the house to pay for attorney fees and the financial expert. Approximately $24,000 remained in her bank account.

¶ 17 Debbie testified that Todd handled the couple's finances during their marriage. She hired an expert witness to determine the value of the marital assets. Debbie sought more than 50% of the marital assets and stated:

> "Based on my age, experience, my work history, I won't be able to live the normal standard of living that we have lived and even if—not even the same, not even similar. And I'm a

4

mother and I think it's extremely important and I've raised my kids to the best that they could be."

Debbie additionally testified,

"I understand that we're going through a divorce, and I'll never—it will never be the same. I understand that. But I want to be able to do the—I don't do anything right now because I'm so afraid that I'm going to use up all of my money. I'm not making much. I don't have much. I don't do anything. I just—I just want fairness."

¶ 18    Michelle Laws, a financial advisor, and a divorce financial analyst, testified as an expert witness. Michelle prepared an initial report that contained a summary of the parties' cash flow and assets. The report contained division of assets calculations based on a 60/40 and 65/35 split as well as maintenance calculations. The report was updated after Laws received additional financial information from Todd. Both reports were admitted as evidence. Laws testified to the short and long-term effects of the proposed marital estate awards, with and without maintenance, and considered the lifestyle and spending habits of the parties. Laws testified that it would take Todd five years to equalize in a 65/35 split.

¶ 19    The circuit court entered a judgment for dissolution of marriage on February 15, 2022. The circuit court found that Debbie was 57 years old, able-bodied and in good health, with an associate's degree. She was a homemaker throughout the marriage and began working full-time as an hourly employee for Addus Homecare after the parties separated. The trial court found that Debbie's gross income was $2600 per month.

¶ 20    The circuit court found that Todd was able-bodied and in good health. Todd was a minority shareholder in GHG, LLC, and Todd's interest in GHG, LLC was considered a nonmarital asset. The circuit court found that no testimony or evidence was presented as to the value of this asset. Todd received $833 in monthly rental income from his interest in GHG, LLC prior to the Covid

5

pandemic, but there was no contract, payments ceased, and it was unknown when payments would resume.

¶ 21    The order additionally included that Todd was employed by SIU as an assistant professor and received monthly pay for nine months of the year. Todd's income fluctuated due to additional income opportunities in addition to his regular salary. The circuit court set Todd's income at $5194 per month without explanation. The circuit court noted that this amount excluded the $833 in rental income that had not been received since 2020. If the $833 in rental payments resumed, "maintenance shall automatically increase and be recalculated in accordance with the guidelines to include the $833 of rental income." Todd was ordered to notify Debbie within seven days of the receipt of payments and his attorney shall prepare an order.

¶ 22    The circuit court awarded the parties the personal property in his or her possession. Debbie received the 2013 Toyota Highlander. Todd received the 2011 Toyota Tacoma, the Kubota tractor, and the Porsche Cayman. Debbie received $27,000 as an offset for the Porsche Cayman and $3000 in attorney fees from the funds held in the trust account. The remaining funds held in trust were divided equally with each party receiving $44,608. Each party retained the funds in their own checking or savings accounts and were responsible for any debts or loans in their names. The circuit court additionally ordered an equal division of the Dodge and Cox Joint Tenancy Investment Account, Fidelity IRA, Fidelity Roth IRA, and the SURS pension/retirement account. Todd was no longer required to keep the life insurance policy in effect.

¶ 23    Debbie filed a posttrial motion to reconsider the relevant factors in sections 503 and 504 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503, 504 (West 2022)). She requested that the circuit court award her 60% of the marital assets, increase the maintenance award, order Todd to sign over ownership of his life insurance policy, and require the parties to

6

file a joint tax return for tax year 2021 with an even split of any refund. The circuit court denied the motion to reconsider.

¶ 24 Debbie filed a timely notice of appeal and a motion to stay the transfer of or disposal of marital assets. The circuit court granted the motion to stay.

¶ 25                                   II. ANALYSIS

¶ 26 On appeal, Debbie argues that when determining the division of property, the circuit court failed to consider the value of Todd's nonmarital assets and failed to consider the parties' bank account funds containing proceeds from the sale of their marital home. Debbie additionally argues that the circuit court erred in its calculation of spousal maintenance and erred by allowing Todd to terminate a life insurance policy used to secure maintenance payments. Debbie seeks a new trial based on the circuit court's failure to make necessary findings of fact in the division of the marital estate and in its award of spousal maintenance.

¶ 27 According to the Illinois Marriage and Dissolution of Marriage Act (Act), "[t]he court shall make specific factual findings as to its classification of assets as marital or non-marital property, values, and other factual findings supporting its property award." 750 ILCS 5/503(a) (West 2022). The failure of a circuit court to determine the value of substantial assets can justify reversal. *In re Marriage of Rosen*, 126 Ill. App. 3d 766, 777 (1984). The valuation of marital property will not be reversed unless it is against the manifest weight of the evidence, and the division of marital property will not be disturbed absent an abuse of discretion. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 700 (2006). "A decision is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or where the trial court's findings are unreasonable, arbitrary, and not based on the evidence." *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶ 75.

7

¶ 28    The Act requires an equitable distribution of assets, not necessarily equal, as the circuit court is required to divide marital property in "just proportions." *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 71. An unequal division of marital property may be appropriate based on the circumstances of the case. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 661 (2008). Section 503(d) of the Act requires the circuit court to consider statutory factors when determining marital property division, including:

(1) each party's contribution to the acquisition, preservation, or increase or decrease in value of the marital or nonmarital property;

(2) the dissipation by each party of the marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having the primary residence of the children;

(6) any obligations and rights arising from a prior marriage of either party;

(7) any prenuptial or postnuptial agreement of the parties;

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(9) the custodial provisions for any children;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic circumstances of the parties. 750 ILCS 5/503(d)(1)-(12) (West 2022).

¶ 29    While the parties agreed that Todd's interest as a minority shareholder in GHG, LLC was nonmarital property, the circuit court erroneously found that no testimony or evidence was presented as to the value of this nonmarital asset. The record reveals that Todd testified that he designed a building owned by GHG, LLC, and in 1998 the value was $1.7 million. Todd further provided testimony that his 1/9th interest in GHG, LLC was valued at $250,000. This valuation was uncontested, and the expert witness included the $250,000 value in her calculation of Todd's net worth. The circuit court's finding that "no testimony or evidence was presented as to the value of this asset" is against the manifest weight of the evidence where the opposite conclusion is clearly apparent.

¶ 30    Furthermore, the circuit court failed to make specific findings regarding the value of marital property. While the case was pending, the parties made an interim distribution of the proceeds from the sale of the marital home. After the home was sold, each spouse retained $59,000 in their separate bank accounts, and the remaining $119,216 was held in trust. During the trial, the circuit court acknowledged that it had not previously addressed the issue of the division of those proceeds. Debbie testified that she had $24,000 remaining in her bank account, and she paid expert witness fees and attorney fees from the interim disbursement. Todd had $50,000 remaining from the disbursement. Rather than identifying the amounts in each bank account from the sale of the home, the circuit court awarded each party the value of the checking and savings account in their names.

¶ 31    Although Debbie is in good health, she is 60 years old and was a homemaker for 26 years during her marriage to Todd. She earns $14 an hour at a full-time job with no prospects for

economic advancement considering her education and work history. Debbie testified that she lived in a one-bedroom apartment and was afraid to "do anything" because she did not have money. Todd, on the other hand, earned $8206 per month for nine months out of the year. Although income may slightly decrease in the future if he is unable to teach an extra class, he previously had opportunities to earn extra income during the months when he was not teaching. Todd additionally has a nonmarital asset valued at $250,000 that previously produced $833 a month in income.

¶ 32 Debbie's limited earning potential without work experience at her age should have been considered by the circuit court. "In a long-term marriage, the source of the assets in acquiring marital property becomes less of a factor, and a spouse's role as homemaker becomes greater." *In re Marriage of Heroy*, 385 Ill. App. 3d at 662. The financial expert provided projections of using a 60/40 split and a 65/35 split of assets. We note that the judgment of dissolution of marriage did not address the expert witness testimony or reports.

¶ 33 The insufficient factual findings by the circuit court demonstrate that it failed to consider the statutory factors when determining the marital property division. The property division left Debbie with less than 50% of the marital assets where the circuit court did not assign a value to the marital property from the sale of their home remaining in the parties' bank accounts. It is also clear that the circuit court did not consider the value of the nonmarital asset of GHG, LLC when making its determination. The circuit court's inequitable apportionment of property was an abuse of discretion, and we remand the case to the circuit court to determine an equitable distribution of the marital estate.

¶ 34 Additionally, the circuit court was required to consider whether the apportionment of marital property was in lieu of, or in addition to, maintenance when determining the division of

10

assets (750 ILCS 5/503(d)(10) (West 2022)). In that regard, we turn to Debbie's arguments that the circuit court erred in its calculation of spousal maintenance while considering this factor.

¶ 35    Section 504(a) of the Act (750 ILCS 5/504(a) (West 2022)) sets forth factors for the circuit court to consider in deciding whether to award maintenance. Those factors include, the income and property of each party, including nonmarital property; the needs of each party; the present and future earning capacity of each party; any impairment of present and future earning capacity of the recipient spouse due to devoting time to domestic duties or forgoing opportunities because of the marriage; the time necessary to enable the party seeking maintenance to acquire appropriate education, training and employment; the standard of living established during the marriage; the duration of the marriage; the age, health, occupation, and income sources of each party; the tax consequences to each party; any contribution and services by the recipient spouse to the other spouse; any valid agreement of the parties; and any other factor that the trial court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 2022).

¶ 36    The circuit court is required by section 504(b-2)(1) to make specific findings of fact, state its reasoning for awarding or not awarding maintenance, and include references to each of the 14 relevant factors set forth in section 504(a). 750 ILCS 5/504(b-2)(1) (West 2022). After the circuit court determines that an award of maintenance is appropriate, it then must determine the amount and duration of maintenance. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 108. "For a marriage of 20 or more years, the court, in its discretion, shall order maintenance for a period equal to the length of the marriage or for an indefinite term." 750 ILCS 5/504(b-1)(1)(B) (West 2022). Permanent maintenance is appropriate "where it is evident that the recipient former spouse is either unemployable or has employment skills but there is a discrepancy between her probable

11

future income and the amount of income that would provide the standard of living she enjoyed during the marriage." *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶ 93.

¶ 37 The amount of a maintenance award lies within the sound discretion of the circuit court, and its decision will not be disturbed absent an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). The Act provides guidelines to determine the maintenance award. Section 504(b-1) provides that,

> "If the combined gross annual income of the parties is less than $500,000 and the payor has no obligation to pay child support or maintenance or both from a prior relationship, maintenance payable after the date the parties' marriage is dissolved shall be in accordance with subparagraphs (A) and (B) of this paragraph (1), unless the court makes a finding that the application of the guidelines would be inappropriate.

> The amount of maintenance under this paragraph (1) shall be calculated by taking 33 1/3% of the payor's net annual income minus 25% of the payee's net annual income. The amount calculated as maintenance, however, when added to the net income of the payee, shall not result in the payee receiving an amount that is in excess of 40% of the combined net income of the parties." 750 ILCS 5/504(b-1)(1)(A) (West 2022).

Section 505 of the Act identifies the appropriate processes to determine an individual's net income for the calculation of maintenance. 750 ILCS 5/505(a)(3)(B) (West 2022).

¶ 38 Todd testified that his salary temporarily increased because he was teaching an extra class, and he would not have that extra income in the future. Todd argued that his salary should be calculated at $56,000 annually based on the average of his salary history from the past several years. Debbie argued that Todd's salary was approximately $73,857 annually based on his salary from last year of $8206 for nine months of the year. The circuit court's determination of Todd's monthly gross income of $5194 ($62,328 annually) was not against the manifest weight of the evidence.

¶ 39 The circuit court stated that it considered the section 504(a) factors and found that Debbie was entitled to maintenance in accordance with the guidelines and formula set forth, without

12

making specific findings of fact. The judgment for dissolution of marriage included that the circuit court calculated the amount of maintenance by applying the guidelines of the Act and standardized net income calculations. The circuit court found that Todd's monthly gross income was $5194 ($62,328 annually) and Debbie's monthly gross income was $2600 ($31,200 annually). The order did not include the actual net annual income used by the court or an explanation of its calculation. It also appears that the circuit court attempted to cap the maintenance award, using the 40% amount, at $328 per month in accordance with the guidelines, although the circuit court could have deviated from the guidelines if it thought the valuations merited such an approach.

¶ 40    Debbie additionally argues that the circuit court erred by allowing the life insurance policy to terminate. Section 503(f) allows the circuit court to order a payor to secure payment of maintenance through life insurance. Section 504(f) provides:

> "An award ordered by a court upon entry of a dissolution judgment or upon entry of an award of maintenance following a reservation of maintenance in a dissolution judgment may be reasonably secured, in whole or in part, by life insurance on the payor's life on terms as to which the parties agree or, if the parties do not agree, on such terms determined by the court, subject to the following:
>
> (1) With respect to existing life insurance, provided the court is apprised through evidence, stipulation, or otherwise as to level of death benefits, premium, and other relevant data and makes findings relative thereto, the court may allocate death benefits, the right to assign death benefits, or the obligation for future premium payments between the parties as it deems just." 750 ILCS 5/504(f) (West 2022).

¶ 41    The circuit court allowed Todd to terminate the life insurance policy without explanation. Debbie, however, argues that a 65/35 split of the marital estate would eliminate the need for spousal maintenance or life insurance as a substitute for maintenance.

¶ 42    On remand, the circuit court will be required to consider the factors provided in sections 503(d)(1) through (12) of the Act (750 ILCS 5/503(d)(1)-(12) (West 2022)) when determining whether to award maintenance or provide an increased split of the marital assets in lieu of

13

maintenance. "Moreover, we note that courts have rejected claims that the trial court abused its discretion in awarding one spouse both permanent maintenance as well as a disproportionate share of the marital estate." *In re Marriage of Heroy*, 385 Ill. App. 3d at 662. If the circuit court awards maintenance, then the circuit court should make appropriate findings including findings regarding the life insurance policy to secure the maintenance payments.

¶ 43                                    III. CONCLUSION

¶ 44     For the foregoing reasons, we reverse the circuit court of Union County's judgment of dissolution of marriage and remand for further proceedings.

¶ 45     Reversed and remanded.